UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

DAVID D. ADAMS,

Plaintiff,

v. Case No. 1:25-cv-00410-JLS-HKS

TRANSUNION LLC;

EXPERIAN INFORMATION SOLUTIONS, INC.;

EQUIFAX INFORMATION SERVICES LLC;

LVNV FUNDING LLC;

SELF FINANCIAL, INC.; and

REGIONAL ACCEPTANCE CORPORATION,

Defendants.



**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DKT. #107)**

**AND MOTION TO ADOPT RECOMMENDATION FOR LEAVE TO AMEND**

Plaintiff David D. Adams, proceeding pro se, respectfully submits these Objections to the

Report, Recommendation, and Order dated March 30, 2026 (Dkt. #107).

While Docket 107 recommends dismissal of the then-pending claims, it also recommends that

Plaintiff be granted leave to amend. Plaintiff supports the recommendation for leave to amend,

but objects to dismissal insofar as the pleading defects identified in the prior complaint have

now been cured.

On March 31, 2026, Plaintiff filed a Second Amended Complaint ("SAC") that directly addresses

the factual deficiencies identified in Docket 107. The Report and Recommendation evaluated a

prior version of the complaint that has now been superseded and is no longer the operative

pleading before this Court. Because the SAC supplies the factual detail previously found

lacking, the rationale for dismissal no longer applies under the Rule 12(b)(6) plausibility

standard governing the operative complaint.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court reviews de novo those portions of the Report and Recommendation to which specific objection is made. Because Plaintiff has now filed a Second Amended Complaint addressing the deficiencies identified in Docket 107, the proper question is whether the SAC states plausible claims for relief under Rule 12(b)(6). At this stage, the Court must accept the SAC's well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. Whether Plaintiff can ultimately prove those allegations is a question for discovery, summary judgment, or trial, not for resolution at the pleading stage.

**OBJECTION ONE: THE SAC NOW PLEADS OBJECTIVELY VERIFIABLE INACCURACIES**

Docket 107 concluded that the prior complaint did not adequately allege objectively verifiable inaccuracies. The SAC cures that defect.

The SAC alleges that the CAC tradeline was reported as an active, recurring delinquency after a

2019 total-loss event and related insurance/GAP satisfaction or extinguishment of the underlying obligation. Reporting a satisfied or extinguished obligation as a live, monthly worsening delinquency for 68 consecutive months supports a plausible inference of objectively

verifiable factual inaccuracy.

The SAC also alleges objectively verifiable contradictions as to other tradelines. As to Self Financial, Plaintiff alleges that a secured card with a $300 limit was reported with a balance vastly exceeding that limit, including extreme utilization and post-charge-off balance growth. That is a facial mathematical impossibility and therefore an objectively verifiable inaccuracy.

As to Regional Acceptance Corporation ("RAC"), the SAC alleges contradictory reporting between

the charge-off amount and the larger present balance, together with repeated charge-off coding and full-balance past-due treatment, all of which plausibly allege materially misleading and

internally inconsistent reporting.

These allegations are materially more concrete than those addressed in Docket 107 and are sufficient to satisfy the pleading standard.

OBJECTION TWO: THE SAC NOW PLEADS UNREASONABLE PROCEDURES UNDER § 1681e(b)

Docket 107 concluded that the prior complaint did not plausibly allege unreasonable procedures

by the consumer reporting agencies. The SAC now does so.

The SAC alleges that TransUnion, Experian, and Equifax relied predominantly on automated ACDV/e-OSCAR dispute responses without meaningful independent review of Plaintiff's documentation or escalation despite repeated disputes, CFPB complaints, and supporting records.

The SAC further alleges that the bureaus continued to verify and republish tradelines despite facial contradictions, mathematical impossibilities, and information that should have triggered heightened scrutiny.

These are not formulaic recitations. They are factual allegations describing how the CRA Defendants allegedly handled disputes and why those procedures were not reasonably calculated

to assure maximum possible accuracy. At the pleading stage, that is sufficient to support a plausible inference of unreasonable procedures under 15 U.S.C. § 1681e(b).

OBJECTION THREE: THE SAC PLAUSIBLY ALLEGES SHAM OR CURSORY REINVESTIGATIONS UNDER § 1681i

Docket 107 also found the prior pleading insufficient as to reinvestigation. The SAC addresses that defect with a detailed chronology and specific factual content.

The SAC alleges repeated disputes beginning in late 2019, multiple dispute rounds by March 2020, CFPB escalation, continued publication of disputed tradelines for years thereafter, and repeated verification of information that was alleged to be inaccurate, contradictory, or unverifiable. The SAC further alleges that the CRA Defendants ignored Plaintiff's documentation

and instead relied on automated furnisher responses through ACDV/e-OSCAR.

Taken as true, these allegations support a plausible inference that the CRA Defendants conducted cursory or sham reinvestigations rather than the reasonable reinvestigations required by 15 U.S.C. § 1681i.

## OBJECTION FOUR: TRANSUNION'S LONE HOLDOUT STATUS STRENGTHENS PLAUSIBILITY AND WILLFULNESS

The SAC alleges that Experian ceased reporting the CAC tradeline after July 2025 and Equifax ceased reporting it after December 2025, while TransUnion continued reporting the same disputed
tradeline beyond that point and after the commencement of this litigation.

That divergence matters. At the pleading stage, it supports a plausible inference that TransUnion's procedures and reinvestigations were uniquely deficient and that its continued reporting was undertaken in reckless disregard of Plaintiff's rights. If two nationwide CRAs

ceased reporting the same disputed tradeline after reinvestigation, it is entirely plausible to infer that TransUnion's continued reporting of the same monthly worsening delinquency reflects
either unreasonable procedures, an unreasonable reinvestigation, or both.

These allegations therefore strengthen the plausibility of Counts I and II, particularly as to willfulness.

OBJECTION FIVE: THE SAC NOW PLAUSIBLY ALLEGES CRA-TO-FURNISHER NOTICE UNDER § 1681s-2(b)

Docket 107 found that the prior complaint did not adequately allege that LVNV, Self, and RAC
received notice of Plaintiff's disputes from a consumer reporting agency. The SAC now directly
addresses that issue.

The SAC alleges that Plaintiff disputed the relevant tradelines with TransUnion, Experian, and Equifax; that those disputes were transmitted via the standard ACDV/e-OSCAR process; and that
the furnishers thereafter verified the information as accurate. At the pleading stage, the CRAs' reporting back that the furnishers had "verified" the tradelines provides a plausible

basis to infer that the furnishers received and acted upon CRA-transmitted notice within the meaning of 15 U.S.C. § 1681s-2(b).

That is enough to plead the statutory trigger for furnisher duties at this stage.

**OBJECTION SIX: THE SAC NOW PLEADS CONCRETE INJURY AND STANDING**

The SAC alleges far more than a lower credit score or abstract reputational concern. It alleges credit denials, housing barriers, increased costs, inability to meaningfully use VA loan eligibility during favorable interest-rate periods, denial of education financing, higher insurance costs, and reduced employment and financing opportunities.

The SAC also alleges that prolonged credit exclusion forced Plaintiff into economically compelled rideshare work, that Plaintiff was injured while performing that work, and that continued derogatory reporting made it harder to transition into safer work afterward, thereby aggravating those injuries. At the pleading stage, these allegations describe concrete, real-world harms sufficient to establish standing and actual injury.

Whether Plaintiff can ultimately prove the full extent of those harms is a later-stage question. For present purposes, the SAC plainly alleges concrete injury.

**OBJECTION SEVEN: THE ALLEGED SYSTEMIC PATTERN FURTHER SUPPORTS PLAUSIBILITY**

The pattern alleged here is not a one-off glitch.

Plaintiff's credit profile reflects multiple obvious errors across four different furnishers, persisting over multiple years despite repeated disputes, reinvestigation requests, and CFPB complaint activity. At the pleading stage, it is more than plausible to infer from that pattern that the conduct alleged reflects systemic dispute-handling and verification failures rather than an isolated private dispute or singular random error.

That inference strengthens Plaintiff's FCRA procedural claims and also supports the consumer-oriented and deceptive-practices aspect of Plaintiff's New York General Business Law § 349 theory. Plaintiff is not alleging a lone clerical mistake. Plaintiff is alleging a repeated pattern of obviously defective reporting and verification practices across multiple tradelines and multiple actors, which plausibly supports the existence of broader consumer-facing

misconduct. The SAC further supports a plausible inference of deceptive consumer-oriented conduct by alleging that disputed tradelines were represented as "verified as accurate," yet

later reversed or removed only after prolonged dispute activity and litigation pressure.

**OBJECTION EIGHT: THE PROPER COURSE IS TO PROCEED ON THE SAC**

Docket 107 recommended leave to amend because the defects identified were pleading deficiencies

rather than final merits determinations. Plaintiff has now done exactly what the Report

contemplated: he filed a wholly integrated Second Amended Complaint that attempts to cure the

identified deficiencies through materially more detailed factual allegations.

Because the SAC is now the operative pleading, and because it cures the deficiencies identified

in the Report with substantially greater factual specificity, the proper course is to proceed

on the SAC rather than dismissing the action based on superseded pleadings.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court:

1. Conduct de novo review of the challenged portions of Docket 107;

2. Sustain these objections to the extent Docket 107 recommends dismissal of claims now

plausibly pleaded in the SAC, including Counts I–VIII and related state-law claims as amended;

3. Adopt the recommendation granting leave to amend and recognize the Second Amended Complaint

as the operative pleading;

4. Treat the SAC as the operative complaint for purposes of all pending Rule 12 motions;

5. Decline to dismiss the amended claims because the SAC now cures the deficiencies identified

in Docket 107; and

6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ David D. Adams

David D. Adams

916 Prospect Ave

Buffalo, NY 14213

(716) 435-6420

davidadams2891@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I served the foregoing through the Court's electronic filing system upon all counsel of record.

/s/ David D. Adams

David D. Adams