UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK



DAVID D. ADAMS,

Plaintiff, Pro Se,

v.

CREDIT ACCEPTANCE CORPORATION, LVNV FUNDING LLC,

TRANSUNION LLC, EXPERIAN INFORMATION SOLUTIONS, INC.,

EQUIFAX INFORMATION SERVICES LLC, SELF FINANCIAL, INC., and

REGIONAL ACCEPTANCE CORPORATION,

Defendants.

**Case No. 1:25-cv-00410-JLS-HKS**

---

## PLAINTIFF'S REPLY TO DEFENDANT REGIONAL ACCEPTANCE CORPORATION'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT, RECOMMENDATION AND ORDER

Plaintiff David D. Adams respectfully submits this Reply to the Response filed by Defendant Regional Acceptance Corporation ("RAC") on April 16, 2026 [Dkt. No. 113].

---

### PRELIMINARY STATEMENT

RAC's Response rests on a single narrow procedural argument — that Plaintiff failed to adequately allege CRA-to-furnisher notice — while strategically ignoring three independent bases for liability that appear in the record and in Plaintiff's Second Amended Complaint ("SAC"). RAC addresses only one of three CRA dispute channels, ignores Plaintiff's direct

correspondence to RAC entirely, and says nothing about the ongoing nature of RAC's misreporting through the date of this filing.

RAC's conduct cannot be insulated from scrutiny by arguing pleading deficiency when the record reflects multi-channel notice, direct dispute correspondence, and continuing violations that postdate this litigation's commencement. The Court should adopt Plaintiff's Objections, permit the SAC to proceed, and allow this matter to advance to discovery.

---

## ARGUMENT

### I. THE PRELIMINARY RECORD ESTABLISHES PLAINTIFF DID NOT DELAY — THE DOCKET PROVES IT

Before addressing the substance of RAC's notice argument, the Court should have the docket record in view, because that record directly contradicts any suggestion that Plaintiff delayed in pursuing amendment.

The case was filed on May 12, 2025 [Dkt. 1]. RAC filed its Motion to Dismiss on July 24, 2025 [Dkt. 82]. The Magistrate issued his R&R on March 30, 2026 [Dkt. 107] — the first time a judge specifically identified what the Amended Complaint was missing at the pleading level. Plaintiff filed his SAC approximately fourteen days after the R&R. That is not delay. That is immediate response to the Court's first definitive guidance.

Moreover, the Court itself frozen the procedural posture throughout this period. On June 23, 2025, the Magistrate issued a Text Order terminating all pending discovery motions as "premature" and directing that a Case Management Order would issue "once defendants have answered the complaint." [Dkt. 18.] No defendant ever answered — every defendant filed a

motion to dismiss or a motion to compel arbitration instead. The result was that no Case Management Order was ever entered, no scheduling conference was ever held, and the case remained in a suspended procedural posture from June 2025 through the R&R in March 2026. Plaintiff cannot be charged with failing to amend during a period when the Court's own order had deferred all next steps pending defendant answers that never came.

The docket also shows that Plaintiff was anything but dormant. He filed timely Memoranda in Opposition to every Motion to Dismiss. He filed supplemental opposition briefs at Dkts. 92, 93, 94, and 97. He filed supplements to the Amended Complaint at Dkts. 102 and 103, and a notice of supplemental medical evidence at Dkt. 104. The record of a delayed plaintiff does not look like this docket. The delay argument has no basis in the record.

---

## II. RAC ADDRESSED ONLY ONE OF THREE INDEPENDENT NOTICE CHANNELS

RAC's entire Response focuses exclusively on the Experian dispute results while ignoring Plaintiff's documented disputes submitted to TransUnion and Equifax — each of which independently triggered RAC's furnisher duties under 15 U.S.C. § 1681s-2(b).

The statute is clear: each consumer reporting agency that receives a consumer dispute has an independent obligation to notify the furnisher. 15 U.S.C. § 1681i(a)(2)(A). Plaintiff submitted disputes to all three major CRAs:

- **TransUnion:** Disputes beginning October–November 2019, with additional disputes in April 2020 and June 2020, producing documented dispute results showing the RAC tradeline status after investigation. (See Dkt. No. 97; Exhibits F-8, F-9.)

• **Equifax:** Multiple disputes producing documented dispute results dated September 2022 showing the RAC tradeline status following reinvestigation. (See Dkt. No. 97; Exhibit F-10.)

• **Experian:** Disputes producing investigation results dated August 2020. (See Dkt. No. 97; Exhibit F-11.)

RAC's duty under § 1681s-2(b) was triggered independently by each of these dispute cycles. The argument that Plaintiff's Experian-specific allegations were insufficiently detailed does not address — and cannot defeat — the TransUnion and Equifax notice channels. Plaintiff requires only one adequate notice allegation to sustain his § 1681s-2(b) claim. RAC's Response leaves two of three notice channels entirely unaddressed.

## III. PLAINTIFF'S DIRECT DISPUTE CORRESPONDENCE TO RAC TRIGGERS INDEPENDENT OBLIGATIONS RAC DOES NOT ADDRESS

RAC's Response focuses exclusively on § 1681s-2(b) — the provision triggered by CRA-to-furnisher notice — while entirely ignoring Plaintiff's direct dispute correspondence to RAC and the independent obligations such correspondence triggers.

Plaintiff submitted a certified dispute and debt validation letter dated January 23, 2020, directed to RAC as a furnisher, with delivery confirmed by USPS certified mail receipt. (See Exhibit F-6; Exhibit F-7.) This direct correspondence to RAC as a furnisher triggered RAC's independent duties under applicable furnisher regulations and provided actual notice of Plaintiff's dispute independent of any CRA intermediation.

RAC's brief does not acknowledge, address, or attempt to distinguish this direct correspondence. The omission is significant. A furnisher who

receives direct written notice of a consumer dispute — via certified mail, with documented delivery — cannot credibly maintain that it lacked notice of the dispute. The certified mail receipt confirms delivery. RAC's silence on this point concedes it.

---

## IV. RAC'S ONGOING MISREPORTING THROUGH ACTIVE LITIGATION RENDERS ANY NOTICE ARGUMENT MOOT

RAC's Response addresses notice as though it were a historical question. It is not. RAC continues to report inaccurate information as of the date of this filing.

The ongoing nature of this violation is dispositive of the notice argument for several independent reasons:

**First,** RAC's misreporting postdates every dispute Plaintiff submitted — to RAC directly, to TransUnion, to Equifax, and to Experian. A furnisher who continues reporting inaccurate information after receiving dispute notice through multiple channels has not merely failed to investigate — it has affirmatively continued a violation with full awareness.

**Second,** RAC received Plaintiff's federal complaint in this action in 2025. Service of a federal complaint specifically alleging FCRA violations based on inaccurate RAC reporting constitutes actual notice of the dispute at the highest possible level. RAC has continued misreporting through, during, and after federal litigation. This pattern is not consistent with a good-faith furnisher who lacked notice — it is consistent with willful disregard.

**Third,** the continuation of misreporting through active litigation is itself an independent violation generating ongoing damages. Each month RAC reports inaccurate information after receiving notice — whether

---

through CRA dispute channels, direct correspondence, or federal litigation — is a separate actionable event. The SAC adequately pleads this continuing violation pattern.

## V. THE MULTI-BUREAU PATTERN ESTABLISHES A FURNISHING-LEVEL FAILURE THAT NOTICE DEFICIENCY CANNOT EXPLAIN

RAC argues that its reporting was accurate based on its own account records. But the identical inaccuracies appearing simultaneously across all three major CRAs — TransUnion, Experian, and Equifax — are not consistent with isolated CRA-level errors. They reflect a furnishing-level failure that RAC controls.

Specifically, RAC has reported a balance of $21,114 and ongoing derogatory status simultaneously across all three CRAs following repossession and liquidation of the subject collateral at the end of 2024. RAC's own Response acknowledges the charge-off amount and past due balance figures while attempting to characterize them as consistent. They are not.

RAC argues that a $21,114 total due and $17,889 written off are reconcilable figures. But this arithmetic exercise misses the inaccuracy. An account that has been charged off and whose collateral has been liquidated should reflect a post-liquidation deficiency — not a static, frozen balance. RAC's own brief concedes the balance has remained $21,114 "at all times since repossession and liquidation." If collateral was liquidated and proceeds applied, the remaining deficiency should have been updated to reflect those proceeds. A balance that never changed after liquidation — with no adjustment for auction or sale proceeds — is not consistent

reporting. It is a failure to update. Metro 2 furnishing standards require that post-repossession deficiency balances reflect actual post-liquidation amounts. A static pre-liquidation figure reported indefinitely after the collateral was sold is a reporting failure that FCRA discovery will establish.

A charged-off account simultaneously reported as carrying an active past-due balance of $21,114 — frozen at the pre-liquidation figure, with no post-sale adjustment, and with no Before/After dispute sections appearing in Experian's dispute results for this account specifically — reflects a reporting methodology that is not merely inaccurate but internally contradictory.

The uniformity of the misreporting across three independent CRA systems is circumstantial evidence that RAC's furnishing practices, not individual CRA processing errors, are the source of the inaccuracy. Discovery into RAC's Metro 2 data furnishing records would establish this directly. The SAC adequately pleads facts that, if proven, would entitle Plaintiff to relief — which is all Rule 12(b)(6) requires.

## VI. LEAVE TO AMEND SHOULD BE FREELY GRANTED AND RAC FAILS THE FUTILITY STANDARD

RAC argues that amendment is futile because the SAC cannot cure the pleading deficiencies in the Amended Complaint. This argument fails for multiple reasons.

**First**, RAC's own brief acknowledges that the SAC contains allegations regarding CRA notification through the automated dispute system at paragraphs 98-99. RAC's complaint is that these allegations lack sufficient detail — not that they are absent. This is a sufficiency argument, not a futility argument. The distinction matters: a futility finding requires that

"the plaintiff's claim fails as a matter of law in a way that could not be cured through amendment." Foy v. New York State Unified Court System, 740 F.Supp.3d 136, 155 (E.D.N.Y. 2024). RAC has not made that showing.

**Second**, the additional notice channels identified above — TransUnion disputes, Equifax disputes, and direct certified correspondence — provide independent bases for the § 1681s-2(b) claim that do not depend on the Experian-specific allegations RAC challenges. Any deficiency in the Experian notice allegation does not render the entire FCRA claim against RAC futile.

**Third**, courts in the Second Circuit "generally disfavor the dismissal of pro se complaints without leave to replead." Id. The liberal amendment standard under Rule 15(a) strongly favors permitting Plaintiff to address any remaining pleading gaps through the SAC, which is already on the record and contains substantially more factual specificity than the Amended Complaint.

## VII. THE EXPERIAN DISPUTE RESULTS DOCUMENT ESTABLISHES CRA-TO-FURNISHER NOTICE THROUGH THE ACDV PROCESS

RAC argues that the Experian August 2025 dispute results contain no Before/After dispute sections for the RAC account and therefore establish no inconsistency in reporting. This argument misreads the document and ignores its most significant evidentiary content.

The Experian dispute results explicitly state:

*"We have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all*

*information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."*

This is not generic boilerplate. This is Experian describing the Automated Consumer Dispute Verification (ACDV) process — the exact statutory mechanism under 15 U.S.C. § 1681i(a)(2)(A) by which CRAs transmit consumer disputes to furnishers. Experian explicitly states it transmitted Plaintiff's dispute and all supporting documentation to RAC and instructed investigation.

The RAC tradeline on the Experian report further reflects the comment code: "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)." This notation does not appear because a consumer disputed. It appears because the furnisher received and processed an ACDV transmission and added this notation as part of its furnisher response. This comment code is direct evidence that RAC received CRA notice and participated in the reinvestigation process.

Experian's reinvestigation results explicitly state it transmitted Plaintiff's dispute and all supporting documentation to RAC through the standard automated dispute system and instructed investigation. The RAC tradeline subsequently reflects the FCRA comment code that appears only when a furnisher has received and processed an ACDV transmission. Whether RAC's internal ACDV receipt records confirm this transmission is a question for discovery — not a basis for dismissal at the pleading stage.

Additionally, the RAC payment history grid in the Experian report reflects extensive periods of "ND" (no data) status across 2020 through

portions of 2023, followed by escalating delinquency codes beginning in mid-2023 through charge-off in December 2024. This pattern of inconsistent data furnishing — alternating between no data, OK status, and escalating delinquency across a multi-year period — is not consistent with accurate and reliable reporting. It reflects a furnishing methodology that was incomplete and unreliable throughout the reporting period, which is itself an inaccuracy subject to dispute and correction.

## VIII. PLAINTIFF DOES NOT OPPOSE DISMISSAL OF THE GBL CLAIM AGAINST RAC AS A FURNISHER

Plaintiff acknowledges that the Magistrate correctly determined that the GBL § 349 claim against RAC as a furnisher is preempted by 15 U.S.C. § 1681t(b)(1)(F) under applicable Second Circuit precedent. Plaintiff does not oppose dismissal of the GBL claim against RAC on this basis.

Plaintiff's focus with respect to RAC is the preservation and advancement of the FCRA claim, which is well-supported by the record and adequately pleaded in the SAC.

## CONCLUSION

RAC's notice argument addresses one of three independent notice channels while ignoring Plaintiff's direct certified correspondence, the ACDV comment code appearing on RAC's own tradeline, and the ongoing nature of RAC's misreporting through active federal litigation. The Experian dispute results RAC cites actually confirm CRA-to-furnisher transmission through Experian's explicit statement of the ACDV process and the FCRA comment code appearing on the RAC tradeline as a result of furnisher participation.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Reject RAC's argument that leave to amend should be denied as futile;

2. Permit Plaintiff's Second Amended Complaint to proceed as to the FCRA claim against RAC;

3. Allow the FCRA claim against RAC to advance to discovery, where RAC's ACDV receipt records, furnishing practices, notice receipt, and ongoing reporting conduct can be fully established; and

4. Grant such other and further relief as the Court deems just and proper.

Plaintiff concedes dismissal of the GBL § 349 claim against RAC as preempted and does not seek to preserve that claim.

---

Respectfully submitted,

/s/ David D. Adams

**David D. Adams**
Plaintiff, Pro Se
716-435-6420
davidadams2891@yahoo.com
Dated: April 17, 2026

---

*Plaintiff certifies that artificial intelligence tools were used as an aid in preparing this filing. All factual assertions are based on Plaintiff's personal knowledge and supporting records. Plaintiff has personally reviewed, verified, and approved this filing and remains solely responsible for its contents.*